UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHARON GRAVES | CIVIL ACTION |
| VERSUS | NO. 26-148 |
| UNITED STATES OF AMERICA | SECTION R (4) |

**ORDER AND REASONS**

Before the Court is defendant United States of America's motion to dismiss for lack of subject matter jurisdiction.[1] Plaintiff Sharon Graves opposes the motion and moves for jurisdictional discovery.[2] For the following reasons, the Court grants the motion to dismiss.

## I. BACKGROUND

Plaintiff Sharon Graves brought this case against the United States to recover damages related to the death of her husband, Jerry Graves.[3] She alleges that Mr. Graves died from mesothelioma caused by his exposure to asbestos at NASA's Michoud Assembly Facility (MAF) between 1977 and 2010.[4] Throughout that time, Mr. Graves allegedly worked as an employee of Martina Marietta Technologies, Inc., and its successor entity, Lockheed

1 R. Doc. 16.
2 R. Doc. 17.
3 R. Doc. 1.
4 R. Doc. 12.

Martin Corporation (together, "Lockheed").[5] Plaintiff alleges that Mr. Graves was regularly and routinely present in various MAF buildings.[6] Plaintiff alleges that while in those buildings, Mr. Graves was exposed to injurious levels of asbestos and that NASA, despite its awareness of the asbestos, negligently failed to take appropriate actions to remediate, contain, or abate the hazardous conditions and failed to follow mandatory asbestos regulations.[7] Plaintiff also alleges that NASA failed to warn building occupants, including the decedent, of the presence of asbestos in the MAF building where the decedent worked.[8] Plaintiff alleges that, as a direct result of that asbestos exposure, Mr. Graves contracted malignant mesothelioma, from which he died on June 5, 2023.[9]

Plaintiff filed this suit against the United States under the Federal Tort Claims Act (FTCA).[10] The United States moved to dismiss the action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[11] The United States asserted that plaintiff's claims fall outside the

---

5 *Id.* at 2.
6 *Id.* at 3.
7 *Id.* at 4–5.
8 *Id.* at 10–11.
9 *Id.* at 5.
10 *Id.* at 1.
11 R. Doc. 6.

FTCA's limited waiver of sovereign immunity.[12] Plaintiff opposed the motion and moved in the alternative for jurisdictional discovery and leave to amend.[13] On June 9, 2026, the Court granted the motion to dismiss without prejudice.[14] The Court found that plaintiff had failed to point to any federal statute, regulation, or policy specifically prescribing a course of action for NASA to follow as to asbestos mitigation.[15] The Court also found that defendant's decisions regarding asbestos mitigation were of the kind that the discretionary function exception to the FTCA's limited waiver of sovereign immunity was designed to shield.[16] Finally, the Court determined that the misrepresentation exception to the FTCA's limited waiver of sovereign immunity barred plaintiff's failure to warn claims.[17] The Court denied plaintiff's motion for jurisdictional discovery, but granted plaintiff leave to amend her complaint.[18]

Plaintiff timely filed her amended complaint.[19] She now points to regulations by the Occupational Safety and Health Administration (OSHA)

---

12 *Id.*
13 R. Doc. 7.
14 R. Doc. 10.
15 *Id.* at 6.
16 *Id.* at 8.
17 *Id.* at 10–11.
18 *Id.* at 12–14.
19 R. Doc. 12.

setting permissible exposure limits ("PELs") for airborne concentrations of asbestos, as well as two executive orders requiring federal agencies to establish and maintain occupational safety and health programs consistent with the OSHA standards.[20] Plaintiff also points to NASA policy and procedures setting a PEL for airborne concentrations of asbestos in NASA facilities.[21]

The United States moves to dismiss plaintiff's amended complaint for lack of subject matter jurisdiction.[22] It argues that plaintiff's claims still fall within the discretionary function exception and the misrepresentation exception to the FTCA's limited waiver of sovereign immunity.[23] Plaintiff opposes the motion and again moves for jurisdictional discovery.[24] The Court considers the motion below.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of the plaintiff's claim. Motions submitted under Rule 12(b)(1) allow a party to challenge the court's

---

20 *Id.* at 8–9.
21 *Id.*
22 R. Doc. 16.
23 *Id.*
24 R. Doc. 17.

subject matter jurisdiction based upon the allegations on the face of the complaint. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by the undisputed facts plus the court's resolution of disputed facts." *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017) (quoting *Barrera-Montenegro*, 74 F.3d at 659). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See Spokeo v. Robins*, 578 U.S. 330, 338 (2016). If the court lacks the statutory or constitutional power to adjudicate a claim, the claim must be dismissed for lack of subject matter jurisdiction. *Home Builders Ass'n of Mississippi v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

## III. DISCUSSION

### A. Sovereign Immunity

The United States and its agencies generally enjoy immunity from suit. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 287 (5th Cir. 2012) (noting that the Government's consent to be sued "is a prerequisite to federal jurisdiction"). Absent a waiver of this immunity or

consent to be sued, any suit brought against the United States or any federal agency must be dismissed for lack of subject matter jurisdiction. *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007). The plaintiff bears the burden of showing a waiver of sovereign immunity. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009).

The FTCA is a limited waiver of sovereign immunity and subjects the United States to tort liability if a private person would be liable for the same act under state law. *Life Partners Inc. v. United States*, 650 F.3d 1026, 1030–31 (5th Cir. 2011). The FTCA's limited waiver of sovereign immunity includes exceptions that, if applicable, bar suit against the government. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). These exceptions are strictly construed in favor of the government. *Id.* There are two exceptions to the FTCA's limited waiver of sovereign immunity at issue here: the discretionary function exception and the misrepresentation exception.

1. *Discretionary Function Exception*

The discretionary function exception provides that the government is not liable for "any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation . . . or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal

agency." 28 U.S.C. § 2680(a). The exception covers only acts that are discretionary in nature and involve an element of judgment or choice. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

The Fifth Circuit uses a two-part test to determine whether a government agency's actions fall within the discretionary function exception. *Campos v. United States*, 888 F.3d 724, 731 (5th Cir. 2018). First, the relevant agency's conduct must be a matter of choice. *Id.* And second, the choice or judgment "must be of the kind that the discretionary function exception was designed to shield." *Id.* (quoting *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016)). As the party asserting jurisdiction, the plaintiff bears the burden of establishing that the test is not satisfied. *Id.*

As to the first prong, a plaintiff must identify a federal "statute, regulation, or policy" that specifically prescribes a course of action for the agency to follow to establish an absence of discretion. *Freeman*, 556 F.3d at 337. If the agency is not bound to act "in a particular manner" by such a statute, regulation, or policy, then the conduct is discretionary. *Id.*

Plaintiff's amended complaint first points to OSHA regulations setting asbestos safety standards.[25] Defendant argues that, because OSHA defines the term "employer" to exclude the United States at 29 U.S.C. § 652, these

[25] R. Doc. 12 at 8–9.

regulations do not apply to NASA.[26] Plaintiff concedes that these regulations do not apply directly to NASA, but points to another Section of OSHA that provides that the head of each federal agency "shall establish and maintain an effective and comprehensive occupational safety and health program which is consistent" with the regulations.[27] 29 U.S.C. § 668(a).

Because OSHA's definition of "employer" explicitly excludes the United States, 29 U.S.C. § 652, the Court finds that the OSHA regulations on which Plaintiff's amended complaint relies did not bind NASA to act "in a particular manner." *Freeman*, 556 F.3d at 337. OSHA's provision that the head of each federal agency "shall establish and maintain an effective and comprehensive occupational safety and health program which is consistent" with OSHA regulations, 29 U.S.C. § 668(a), does not change this analysis. Agencies, including NASA, maintained discretion as to how to design their occupational safety and health programs consistent with OSHA's regulations. This provision did not remove discretion from NASA, but rather clarified the discretion that NASA had to establish its own occupational health and safety program consistent with OSHA regulations. Indeed, "the evaluation of actual or suspected hazards, and the decision to proceed in a

---

26 R. Doc. 16 at 8.

27 R. Doc. 17 at 6.

particular manner in light of those hazards, are protected discretionary acts, not subject to tort claims in the district court." *Ford v. American Motors Corp.*, 770 F.2d 465, 467 (5th Cir. 1985). Thus, the OSHA regulations alone are insufficient to bring NASA's conduct outside of the discretionary function exception.

Plaintiff next points to two executive orders to support her claim: Executive Order 11807 and its eventual replacement, Executive Order 12196, both titled "Occupational Safety and Health Programs for Federal Employees" ("the Executive Orders").[28] Executive Order 11807 required federal agencies to "establish and maintain an occupational safety and health program meeting the requirements of Section 19 of [OSHA]," as well as "[e]stablish procedures for the adoption of agency occupational safety and health standards consistent with the standards promulgated by the Secretary pursuant to Section 6 of [OSHA]." Exec. Order No. 11807, 39 Fed. Reg. 35559 (1974). Executive Order 12196 strengthened these requirements, mandating that agency heads "[f]urnish to employees places and conditions of employment that are free from recognized hazards," "[a]ssure prompt abatement of unsafe or unhealthy working conditions," and "[a]ssure that

[28] R. Doc. 12 at 9.

periodic inspections of all agency workplaces are performed by personnel," among other measures. Exec. Order No. 12196, 45 Fed. Reg. 12769 (1980).

Defendant argues that, because the Executive Orders are explicitly limited to the working conditions of federal employees, the Executive Orders were not directives regarding the employees of government contractors like Mr. Graves.[29] Plaintiff contends that, because the MAF building where Mr. Graves worked was a NASA workplace, NASA owed a duty to maintain safe working conditions there under the Executive Orders, regardless of who employed Mr. Graves.[30]

The Court finds that the Executive Orders are also insufficient to bring NASA's conduct outside of the discretionary function exception. The titles of both Executive Orders are indicative of their scope: "Occupational Safety and Health Programs *for Federal Employees*" (emphasis added). The contents of the Executive Orders confirm this scope: "the Federal Government has a special obligation to set an example for all employers by providing a safe and healthful working environment for its employees"; agencies must "[f]urnish to employees places and conditions of employment that are free from recognized hazards"; and agencies must "[a]ssure response

29 R. Doc. 16 at 10.
30 R. Doc. 17 at 8.

to employee reports of hazardous conditions." This language makes clear that, even if the Executive Orders placed mandatory duties on NASA regarding the working conditions of its own employees, they did not place duties on NASA regarding the working conditions of its contractors' employees. Because the Executive Orders do not establish a specific course of conduct that NASA had no choice but to follow regarding Mr. Graves, they do not take NASA's actions outside of the discretionary function exception.

Plaintiff's argument that the MAF was a workplace that the Executive Orders and OSHA required NASA to inspect is also without merit. Plaintiff relies on a NASA employee's statements about NASA's mission at the MAF to argue that NASA was obligated to inspect the entirety of the facility.[31] But OSHA's regulations setting the "Basic Program Elements for Federal Employee Occupational Safety" limit inspections to areas "where work is employed by employees of the agency." 29 C.F.R. § 1960.26(b)(1). And the Executive Orders limit the reach of inspections to "agency workplaces." Exec. Order 11807; Exec. Order 12196. That NASA employees conducted work in some parts of the MAF did not convert the entire facility to an agency workplace under 29 C.F.R. § 1960.26(b)(1). NASA did not station its employees in contractor work areas, nor did its employees occupy or

31 *Id.*

regularly enter those work areas.[32] The regulation did not require NASA to inspect Mr. Graves's workplace in the MAF.

Finally, plaintiff cites NASA's asbestos PEL as a binding directive.[33] Plaintiff points to a 1984 NASA survey of the MAF that found above-PEL levels of asbestos in the facility and alleges that NASA nevertheless failed to abate such hazards.[34]

The Court finds that NASA's asbestos PEL is also insufficient to overcome the discretionary function exception. As the Court held in its earlier order, plaintiff must show that some authority established a specific course of conduct that NASA had no choice but to follow.[35] While NASA's asbestos PEL set a threshold level for a hazardous condition, it did not specify how the agency had to respond to the existence of that condition. NASA's method of asbestos mitigation was discretionary. Thus, the first step of the discretionary function exception test is satisfied.

The second prong of the discretionary function exception test asks whether decisions in asbestos mitigation are "of the kind that the discretionary function exception was designed to shield." *Barron v. United*

---

32 R. Doc. 16-2 ¶ 16.
33 R. Doc. 12 at 9.
34 R. Doc. 17 at 9.
35 R. Doc. 10 at 7.

*States*, 31 F.4th 347, 350 (5th Cir. 2022) (quoting *Berkovitz*, 486 U.S. at 536). In its earlier order, the Court found that NASA's asbestos mitigation decisions satisfied this second prong of the discretionary function exception test.[36] Because plaintiff's amendments to its complaint address only the first prong of the analysis, the Court's reasoning on the second prong applies here. Indeed, the "evaluation of actual or suspected policy hazards," like asbestos, "and the decision to proceed in a particular manner in light of those hazards" are susceptible to policy considerations. *Ford*, 770 F.3d at 467. Moreover, the government "may delegate its safety responsibilities to independent contractors in the absence of federal laws or policies restricting it from doing so." *Andrews v. United States*, 1221 F.3d 1430, 1440 (11th Cir. 1997). Plaintiff has not pointed to any law or policy preventing NASA from delegating its asbestos safety measures here. And NASA's contracts with Mr. Graves' employers did just that.[37]

Thus, plaintiff has not met her burden to establish that the two-prong discretionary function exception test is not met. The Court again finds that the discretionary function exception to the FTCA's limited waiver of sovereign immunity bars plaintiff's suit against the government. Because

---

36 *Id.* at 8.

37 R. Docs. 16-3 at 38; 16-4 at 28–29.

sovereign immunity bars suit against the government, the Court lacks subject matter jurisdiction and must dismiss the case without prejudice.

*2. Misrepresentation Exception*

The misrepresentation exception to the FTCA's limited waiver of sovereign immunity bars plaintiff's failure to warn claims against the government. The FTCA's waiver of sovereign immunity does not apply to any "claim arising out of . . . misrepresentation." 28 U.S.C. § 2680(h).

In its earlier order, the Court found that the misrepresentation exception barred plaintiff's failure to warn claims.[38] Plaintiff concedes that her amended complaint does not affect this analysis and only points out that her other claims are not barred by the misrepresentation exception.[39] As the Court held before, plaintiff's failure to warn claim falls squarely within the misrepresentation exception.[40] Thus, the Court again dismisses the failure to warn claim for lack of subject matter jurisdiction.

**B. Jurisdictional Discovery**

Plaintiff also moves for jurisdictional discovery. The Court "has broad discretion in all discovery matters." *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). Plaintiff bears the burden "of demonstrating the necessity of

---

38 R. Doc. 10 at 10.
39 R. Doc. 17 at 12.
40 R. Doc. 10 at 10.

discovery." *Joiner v. United States*, 955 F.3d 399, 407 (5th Cir. 2020). That burden is "even greater 'when the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit,'" as is true here, "'because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery." *Id.* at 407–08 (quoting *Freeman*, 556 F.3d at 342).

The Court denied plaintiff's first motion for jurisdictional discovery because plaintiff did not demonstrate how that discovery would overcome the discretionary function exception and defeat sovereign immunity.[41] This request is more specific than plaintiff's first request. Here, plaintiff seeks jurisdictional discovery including:

> (1) local Michoud policies, procedures, and directives governing asbestos identification, inspection, air monitoring, and abatement adopted pursuant to or following the February 18, 1983 NASA memorandum; (2) records of visual inspections, air sampling, and abatement activities for Buildings 103, 320, and 350 from 1977 through 2010, including any records maintained pursuant to the 1983 NASA memo; (3) documents identifying any person designated as Asbestos Control Officer or performing that function at Michoud, and that person's reports; and (4) NASA's records pertaining to and response to the 1984 survey. Plaintiff further requests leave to

41 R. Doc. 10 at 12.

> depose Mr. Savoy, limited to the matters asserted in his declaration.[42]

Even if such records exist, they would be insufficient to overcome the discretionary function exception. As the Court held in its earlier order, the 1983 memorandum underscores NASA's discretion in addressing asbestos. Any records, reports, or procedures developed at MAF pursuant to that memorandum would simply represent the exercise of that discretion. Because plaintiff fails to explain how this jurisdictional discovery would overcome the discretionary function exception, she is not entitled to such discovery in this immunity-related suit.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the United States' motion to dismiss for lack of subject matter jurisdiction. Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE. The Court DENIES plaintiff's motion for additional jurisdictional discovery.

New Orleans, Louisiana, this 9th day of September, 2026.

Sarah Vance

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

42 R. Doc. 17 at 14.